UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-217-GWU

JUANITA MEDLEY, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Juanita Medley brought this action to obtain judicial review of the unfavorable portion of a partially favorable administrative decision on her applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

        impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher

v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional

impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Medley, a 58-year-old former school bus driver with a "limited" education, suffered from "severe" impairments related to a major depressive disorder and a possible bipolar disorder. (Tr. 13, 22).  Non-insulin dependent diabetes mellitus, a history of renal insufficiency, gastroesophageal reflux disease, degenerative disease of the lumbar spine and obesity were found to be "non-severe" impairments. (Tr. 14). While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of work at all exertional levels. (Tr. 18, 22).  Since the available work was found to constitute a significant number of jobs in the national economy, the

claimant could not be considered totally disabled. (Tr. 23). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Id.).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Linda Taber included a limitation to entry level work with simple repetitive procedures, no frequent changes in work routines, no commercial driving, no rigid production quotas and a restriction to an object-focused work environment with only occasional interaction with co-workers, supervisors, and the general public. (Tr. 49). Taber identified a significant number of jobs which could still be performed. (Tr. 49-50). Therefore, assuming that the vocational factors considered by the expert fairly characterized Medley's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The ALJ dealt properly with the evidence of record relating to Medley's mental condition. Psychologist Christi Hundley examined the plaintiff and diagnosed a generalized anxiety disorder versus anxiety disorder not otherwise specified and a depressive disorder not otherwise specified versus major depressive disorder. (Tr. 245). Hundley indicated that the claimant would be "mildly" limited in areas of affective regulation and short-term memory. (Tr. 246). The hypothetical factors were compatible with this opinion.

Dr. Shahzad Shahmalak of the Baptist Regional Medical Center treated Medley for her mental problems. Dr. Shahmalak rated the plaintiff's ability as either "fair" or "poor or none" in most areas of mental functioning on an October, 2007 assessment form. (Tr. 296-297). Even more severe mental limitations were identified by the doctor on a February, 2009 mental assessment form. (Tr. 681-682). The ALJ rejected Dr. Shahmalak's opinion as binding. (Tr. 21). The claimant objects to this finding. However, the ALJ noted a number of good reasons for rejecting the doctor's opinion. Dr. Shahmalak had indicated on his October, 2007 assessment that Medley had experienced repeated episodes of deterioration in work-like settings but the ALJ noted that his treatment notes were devoid of evidence of such episodes. (Id.). The doctor indicated in February of 2009 that the plaintiff's mental condition had deteriorated since October, 2007, a finding that the ALJ also concluded was not supported by examination of the physician's treatment notes. (Tr. 22). The claimant has not disputed these findings. The medical record reveals that Dr. Shahmalak indicated that the claimant had poor energy and lacked motivation in October of 2007. (Tr. 605). In January of 2008, Medley was said to be responding well to treatment and had fair energy and motivation. (Tr. 603). In October of 2008, the plaintiff was again noted to be responding well to treatment with fair energy and motivation. (Tr. 666). In February of 2009, her depression was noted to be improved with medication. (Tr. 692). The claimant repeatedly denied experiencing side effects relating to her medications. (Tr. 270, 273, 280, 603, 605,

607, 609, 611, 613, 666, 668, 670, 672, 674, 692, 695). The ALJ noted that other mental health professionals of record, such as Hundley and the non-examining medical reviewers, identified far less severe functional limitations. (Tr. 22). Therefore, under these circumstances, the court finds that the ALJ properly rejected Dr. Shahmalak's opinion.

In September of 2007, Dr. Thomas Fowles of the Strauss Family Practice Clinic, a treating physician, diagnosed depression and anxiety. (Tr. 300). Dr. Fowles opined that Medley's symptoms would constantly interfere with her attention and concentration and that she would be unable to perform even low stress jobs. (Id.). The ALJ rejected the physician's opinion because it was inconsistent with the medical evidence and because Dr. Fowles was not a mental health specialist. (Tr. 21). The opinion was also offset by that of Hundley who was a mental health specialist. (Id.). This action would appear appropriate. Treatment records from Dr. Fowles reveal that in August of 2007, shortly before the doctor issued his opinion, the plaintiff's mood and affect were described as normal, her judgment and insight were appropriate, and she was said to have no memory impairment. (Tr. 313). Therefore, the court finds that the ALJ properly rejected the mental limitations of Dr. Fowles.

Psychologists Jay Athy (Tr. 247-248) and Jane Brake (Tr. 631-632) each reviewed the record and opined that Medley would be "moderately" restricted in such areas as handling detailed instructions, maintaining attention and

8

concentration for extended time periods, completing a normal workday or workweek without interruption from psychologically-based symptoms and performing at a consistent pace without an unreasonable length and number of rest periods, interacting appropriately with the general public and responding appropriately to changes in the work setting. These restrictions, while more extensive than those found by the ALJ, do not appear to be totally disabling. The administrative regulations provide that "generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). Thus, the ALJ could reject the opinions of the medical reviewers in favor of that of Hundley, the examiner. Furthermore, the plaintiff has not argued that the ALJ erred in failing to adopt the opinions of the medical reviewers. Therefore, the court finds no error.

The ALJ properly concluded that Medley did not suffer from a "severe" physical impairment. In September of 2007, Dr. Fowles completed a Physical Residual Functional Capacity Assessment upon which he indicated that the plaintiff had no physical restrictions. (Tr. 300-302). In March of 2009, the doctor identified extremely severe physical limitations which would restrict the plaintiff to less than a full range of light level work. (Tr. 686). The ALJ rejected the March, 2009 assessment for a number of reasons including the fact that Dr. Fowles failed to cite what evidence supported such a serious deterioration in the claimant's physical functioning and the lack of treatment notes documenting severe physical findings.

9

(Tr. 15). Instead, the ALJ relied upon the September, 2007 findings. (Id.). This action would appear appropriate. The treatment notes record generally modest findings. For example, in May of 2007, the doctor reported normal breath sounds, normal muscle strength, and normal bowel sounds. (Tr. 317). The plaintiff's diabetes was said not to be uncontrolled in July of 2007. (Tr. 315). Therefore, the court finds no error.

Dr. Fowles also submitted an undated letter in which he opined that Medley was permanently disabled. (Tr. 685). The ALJ noted that this opinion goes to the ultimate issue of disability and is reserved to the Commissioner under the federal regulations at 20 C.F.R. § 404.1527(e)(1). (Tr. 15). Therefore, this opinion was properly rejected by the ALJ.

Dr. Robert Brown reviewed the record and opined that Medley did not suffer from a "severe" physical impairment. (Tr. 635). While Dr. Brown did not see the full record, his opinion provides at least some support for the administrative denial decision.

Dr. Shahmalak opined that Medley would not be able to stand, walk, bend or stoop to work. (Tr. 682). The ALJ noted that Dr. Shahmalak was a psychiatrist who had not treated the plaintiff for a physical impairment and, so, rejected the opinion as binding. (Tr. 16). Review of the doctor's treatment notes supports this finding. (Tr. 265-290, 600-616, 665-677, 690-699). Therefore, Dr. Shahmalak's physical restrictions were properly rejected.

The ALJ properly concluded that Medley's problems with diabetes mellitus, history of renal failure, gastroesophageal reflux disease, degenerative disc disease of the lumbar spine and obesity were not "severe" impairments. (Tr. 14). As noted by the ALJ, Dr. Fowles diagnosed diabetes mellitus. (Id.). Dr. Fowles repeatedly indicated that claimant's diabetes was not uncontrolled. (Tr. 222, 225, 309, 315, 413, 426). The claimant testified that her diabetes was controlled by medication and diet. (Tr. 44). Dr. Fowles also reported a history of renal failure. (Tr. 14). Despite this diagnosis, the ALJ noted that the record was devoid of regular treatment for a kidney disorder, a finding that Medley does not dispute. (Id.). In October of 2006, a CT scan of the abdomen and pelvis revealed no abnormalities. (Tr. 351). Dr. Fowles diagnosed gastroesophageal reflux disease in August of 2007. (Tr. 14, 313). In May of 2008, her nausea problems were said to have been intermittent. (Tr. 641). The ALJ did not see how this condition imposed work-related restrictions on the plaintiff. (Tr. 14). An October, 2006 CT scan revealed degenerative changes at L4-L5 and L5-S1. (Tr. 595). Complaints of back pain were noted by Dr. Fowles in February of 2008 (Tr. 646), but the ALJ noted that the record was devoid of further back pain complaints or treatment, a finding the claimant does not dispute (Tr. 15). Finally, the ALJ noted that while Medley was obese, the record did not establish more than minimal limitation based on this condition, another finding unchallenged by the claimant. (Id.). Therefore, the ALJ properly found that these conditions were not "severe" impairments.

Medley argues that her medical problems would prevent her from maintaining employment and, so, she could not meet the durational requirements for substantial gainful activity. The plaintiff cites the Ninth Circuit Court of Appeals case of <u>Gatliff v. Commissioner of Social Security</u>, 172 F.3d 690 (9th Cir. 1999). However, in <u>Gatliff</u>, the record contained considerable evidence that the claimant would not be able to maintain employment more than a couple of months and the ALJ had even acknowledged this fact. <u>Gatliff</u>, 172 F.3d at 692. In the present action, Medley has not identified similar evidence suggesting that she would not be able to maintain employment. Therefore, the court must reject the plaintiff's argument.

The court notes that Medley submitted a number of records to the Appeals Council which were never seen by the ALJ. (Tr. 707-865). This action raises an issue concerning a remand for the taking of new evidence before the Commissioner. <u>Cotton v. Sullivan</u>, 2 F.3d 692 (6th Cir. 1993). A court may order additional evidence be taken before the Commissioner, " . . . but only upon a showing that there is new evidence to be taken which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g). The statute provides that a claimant must prove that the additional evidence is both "material" and that "good cause" existed for its not having been submitted at an earlier proceeding. <u>Sizemore v. Secretary of Health and Human Services</u>, 865 F.2d 709, 710 (6th Cir. 1988). In order to demonstrate "materiality," a claimant must show that a reasonable probability exists

that the Commissioner would have reached a different conclusion if originally presented with the new evidence. Sizemore, 865 F.2d at 711. The party seeking the remand bears the burden of showing that a remand is proper under § 405. Willis v. Secretary of Health and Human Services, 727 F.2d 551 (6th Cir. 1984). In the present action, the plaintiff has not adduced any arguments as to why such a remand would be required.

The undersigned concludes that the administrative decision should be affirmed. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 12th day of October, 2011.

Signed By:

*G. Wix Unthank*

United States Senior Judge